BERNARD MILLER v. CONRAD STREEDER—S. WEBER, Intervenor.

To effect the seizure of a negotiable note, *before maturity*, it must be taken into actual custody by the Sheriff.

In order to make a valid seizure of tangible property, the thing levied upon must be taken into actual possession by the officer. A promissory note, endorsed in blank by the payee, is of that class of property ; it is not merely the evidence of debt : with its endorsements, it contains the obligations of several parties, and is the subject of sale and delivery, as much as any other movable.

An endorsee, after maturity, takes the note subject to equities. But, when we speak of equities between the parties, it is not to be understood, by this expression, that all sorts of equities existing between the parties, from other independent transactions between them, are intended ; but only such equities as attach to the particular note, and *as between those parties*, would be available, to control, qualify or extinguish any rights arising thereon.

If the evidence of the right be negotiable, and is acquired without notice by an endorsee, even after the seizure of the right, the seizure is ineffectual as to him : a principle adopted in favor of commerce. But if the evidence of the right be not negotiable, the seizure of the debt or right, of which it is the evidence, by notification to the debtor or keeper of the subject of the right, is valid against the subsequent assignee of the debt or right.

APPEAL from the Third District Court of New Orleans, *Duvigneaud, J. A. Sambola,* for plaintiff and appellant. *P. W. Collens,* for defendant. *T. Wharton Collins,* for intervenor.

HOWELL, J. On the 30th November, 1860, the plaintiff instituted suit against the defendant, in the Third District Court of New Orleans, upon a promissory note for $324, made by the latter to the order of and endorsed by one H. Alt, and payable six months after date, which was, on the 28th July, 1860, (nine days after its maturity,) protested for non-payment, at the instance of plaintiff.

On the 12th December, 1860, the defendant answered, that he had been notified that plaintiff was not the owner of the note sued on; that it had been seized, with his indebtedness thereon, under two writs of fi. fa., in the cases of *Weber* v. *Alt*, in the Third and Fifth District Courts, as the property of said Alt, who was the true holder and owner thereof at maturity and since; and that, as a mere stakeholder, ready to pay either party, he is not bound to pay, until the conflict of claims is decided.

On the same day, the said Weber intervened, alleging that he had issued executions upon his two judgments against the said Alt, obtained in the Third and Fifth District Courts of New Orleans, and, in a garnishment process, caused the seizure of the note sued on in this case, and the amount due thereon, in the hands of said Streeder, the maker; that Alt was the actual holder of said note, at the time, and that this suit has been instituted by the plaintiff in order to cover the same and defeat intervenor by fraud and simulation; that the garnishee, Streeder, admitted owing the amount of said note, but omitted to declare in whose hands it then was; that he traversed said answers, and "that, *by virtue of said proceedings*, he has the best legal and equitable right to the amount sued on herein," and he prays for judgment against defendant for the amount of the note, in part satisfaction of his writs of execution.

On these pleadings the parties went to trial, and the lower Court rendered judgment in favor of the intervenor and against plaintiff and defendant, condemning the latter to pay $324, amount of the note sued on,.

with interest, to the Sheriff, to be applied to the satisfaction of the writ, in his hands in the case of *Weber* v. *Alt*, in the Third District Court, and the excess, if any, to the one in the case of *Weber v. Alt*, in the Fifth District Court, the defendant to pay costs of suit, and plaintiff those of the intervention; from which judgment, plaintiff, Miller, appealed.

There is no dispute as to defendant's obligation to pay the note, and the question to be decided is, was there a seizure of it, or has the intervenor acquired any right to it?

The record contains no evidence of bad faith in plaintiff, or his knowledge of the attempted seizure, and we are required only to determine the effect of the proceedings under the Act of 1839, resorted to by the intervenor.

The return of the Sheriff shows that nothing came into his hands by the seizure, and the garnishee, in his answers, states that a demand of payment of the note was made of him (by whom he does not say) on the day on which the interrogatories were served on him, and refused in consequence thereof, and that he does not know in whose hands the note was on the day of filing his answers, to wit: on 31st October, 1860. These answers were traversed by the plaintiff in the executions, intervenor herein, and no further steps taken.

The evidence shows further, that, on the 16th July, 1860, Alt, the payer of the note, demanded payment of the note of Streeder, without success, and again on the 19th, the last day of grace, and he was then met with the information that an attachment had been levied upon the note by Weber; that Alt made some unsuccessful effort to effect an arrangement with Weber; that prior to the protest of the note, plaintiff's attorney informed Streeder, the maker, that the note belonged to the plaintiff, Miller, who, it appears, was also a creditor of Alt.

It is conceded that, to effect the seizure of a negotiable note *before maturity*, it must be taken into actual possession by the Sheriff; but the intervenor contends that, as the note in this case is shown to have been in the possession of the payer, his debtor, on the day of its maturity, it lost its negotiability so far as to make it subject to the rules applicable to other incorporeal rights; and being the mere evidence of a debt, and its transfer conveying no other nor greater rights than those of the transferror, it is enough to seize in the hands of the maker, by service of the garnishment process, under the Act of 1839; a doctrine to which we cannot give our assent, as applied in this case. Counsel has referred us to one case, that of *Wilson* v. *Munday*, 5 L. 487, where the sale of notes under a fi. fa. was sustained, although the Sheriff had not taken possession of them, on the principle that it was sufficient to sell the right of the defendant in execution to them. The facts in that case are not analogous to those in the case at bar, yet the doctrine enunciated there seems to be inconsistent with our settled jurisprudence. See 7 R. 500; 2 A. 493, 910; 4 A. 369; 6 A. 182. The last case quoted (*Scott* v. *Neblett*, 6 An. 182) is one in which the note was *past due* and in suit by the payee against

the maker, when the Sheriff seized it on execution against the payee, by taking a copy of it and serving a notice on the clerk of the Court, where it was deposited, and the maker, defendant in said suit; but this Court held that there was no seizure, because the Sheriff failed to take actual possession. Chief Justice Eustis, the organ of the Court, said: "We have always held that, in order to make a valid seizure of tangible property, the thing levied upon must be taken into actual possession by the officer. A promissory note, endorsed in blank by the payee, is of that class of property; it is not merely the evidence of debt: with its endorsements it contains the obligations of several parties, and it is the subject of sale and delivery, as much as any other movable."

It is true, as contended by counsel, that an endorsee after maturity takes the note subject to equities. But, as Story says, "Where we speak of equities between the parties, it is not to be understood, by this expression, that all sorts of equities existing between the parties, from other independent transactions between them, are intended; but only such equities as attach to the particular note, and *as between those parties*, would be available, to control, qualify or extinguish any rights arising therefrom." Story on Promissory Notes, ? 178.

In a leading case, *Fisher* v. *Laland*, 4 Cush. 456, Shaw, C. J., in the course of his opinion, speaking of the character of a note over due, remarked: "The note does not cease to be negotiable; the endorser takes a title; and if the defendant could make any defence against a suit brought by such endorser, he can make it against the endorsee."

In the case of *Harris* v. *The Bank of Mobile*, 5 An. 539, Mr. Justice Preston says: "If the evidence of the right be negotiable, and is acquired without notice by an endorser, even after the seizure of the right, the seizure is ineffectual as to him: a principle adopted in favor of commerce. But if the evidence of the right be not negotiable, the seizure of the debt or right, of which it is the evidence, by notification to the debtor or keeper of the subject of the right, is valid against the subsequent assignee of the debt or right."

In the case at bar there are no equities urged by the maker, nor questions raised by him, except as to whom he can safely pay; but a judgment creditor of the payee claims a right to the amount of the note, by virtue of his executions and garnishment process, served upon the maker. This we have found to be ineffectual as to the plaintiff, because he is the endorser of a negotiable note over due, which did not go into the possession of the Sheriff under those writs, and he is not shown to have any knowledge of the attempted seizure at the time he acquired it. The answers of the garnishee do not show that he was, at the date of the service of the interrogatories upon him, or the filing of his answers, indebted to the defendant in the executions, but that he owed the amount of the note, in whosesoever hands it might be.

We think, therefore, that the intervenor has failed to establish his right to the note sued on or its proceeds.

It is therefore ordered, adjudged and decreed, that the judgment of he lower Court be avoided and reversed; and it is now ordered, adjudged and decreed, that there be judgment dismissing the intervention of Stanislaus Weber, at his costs in the lower Court; and further, that plaintiff, Bernard Miller, recover of defendant, Conrad Streeder, the sum of three hundred and twenty-four dollars, wjth legal interest from July 19, 1860, with the costs of the main action in the lower Court; the costs of appeal to be paid jointly by the appellees.